Loyce McCOY, Appellee,

v.

Richard S. SCHWEIKER, Appellant.

Clifford M. STACK, Appellee,

v.

Richard S. SCHWEIKER, Appellant.

James D. DESEDARE, Appellee,

v.

Richard S. SCHWEIKER, Appellant.

Nos. 81–1629, 81–1667 and 81–1756.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1982.

Decided June 21, 1982.

---

Atty., Dept. of Health and Human Services, Baltimore, Md., of counsel.

Dan T. McGrevey, Fort Dodge, Iowa, for appellees.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON,* HENLEY,** McMILLIAN and ARNOLD, Circuit Judges, *en banc.*

ARNOLD, Circuit Judge.

In each of these three social-security cases the Secretary of Health and Human Services found that the claimants were not currently engaged in substantial gainful activity, that they were suffering from a severe physical impairment significantly limiting their ability to carry out basic work activities, that the impairments involved were not among those specifically listed in Appendix 1 to Subpart P of Part 404, 20 C.F.R. §§ 404.1501 et seq. (1981), and that the claimants were unable to do the jobs they had had in the past. The Secretary then found, however, that each of the claimants retained the ability to do either light or sedentary work. He then considered each claimant's age, education, and work experience and consulted the tables contained in Appendix 2 to Subpart P of Part 404. On the basis of these tables, the Secretary concluded that there were jobs in the national economy that the claimants could perform, and held that a finding that the claimants were not disabled was therefore compelled by the Guidelines.

Suits were brought in the district courts to set aside these denials of benefits. The principal argument urged by the claimants was that the tables in Appendix 2, sometimes called the "grid," exceeded the authority of the Secretary to issue regulations, because they purported to eliminate the Secretary's duty to call a vocational expert as a witness to prove that a claimant who cannot return to his past work can nonetheless do other work that exists in the

Donald W. Lingo, Lingo & Johnson, Texarkana, Ark., for appellee McCoy.

J. L. Whaley, Legal Service of Eastern Missouri, Inc., St. Louis, Mo., amicus curiae.

J. Paul McGrath, Asst. Atty. Gen., Stuart E. Schiffer, Acting Asst. Atty. Gen., Robert S. Greenspan, Frederick Geilfuss, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for appellant; Randolph W. Gaines, Chief of Litigation, Andrew E. Wakshul,

---

* Judge Stephenson became a Senior United States Circuit Judge on April 1, 1982.

** Judge Henley became a Senior United States Circuit Judge on June 1, 1982.

national economy.[1] The district courts, relying on the numerous strong precedents in this Circuit requiring the use of vocational experts, *e.g., Zimiga v. Schweiker*, 651 F.2d 611, 612–13 n.2 (8th Cir. 1981); *Garrett v. Richardson*, 471 F.2d 598 (8th Cir. 1972), agreed that the Guidelines were not an adequate substitute for the testimony of a vocational expert. Each case was remanded to the Secretary for further proceedings in accordance with the district court's opinion, 534 F.Supp. 21. These appeals by the Secretary followed.[2]

We consolidated these cases and took the unusual step of directing that they be initially submitted to the Court en banc. The question presented involves an asserted conflict between the Secretary's Guidelines and previous decisions of this Court, and the Court en banc is equipped to address that kind of issue with greater freedom, perhaps, than a panel of three judges, even though the Secretary does not ask us to overrule previous decisions, but simply to evaluate them afresh in light of the new Medical-Vocational Guidelines. We have undertaken to do so, and to examine fully the decisions of other courts of appeals on the question of the Guidelines' validity—decisions most of which were handed down after the district courts decided these cases. After this examination, we are persuaded that the Guidelines, as limited by their own terms and as interpreted by this opinion, are, as against the challenges here asserted,

within the power delegated by Congress to the Secretary. We therefore vacate the judgments of the district courts and remand these cases for further proceedings in accordance with this opinion—in particular, for an individual determination, on the facts of each record, whether the Guidelines were applicable and properly applied.

## I.

We begin by summarizing briefly the new regulations, which first became effective on February 26, 1979, 43 Fed.Reg. 55,-349 (1978). As revised on August 20, 1980, 45 Fed.Reg. 55,584 (1980), the regulations, which we refer to generally as Medical-Vocational Guidelines, are codified as Subpart P of Part 404 of Chapter III of Title 20 of the Code of Federal Regulations, 20 C.F.R. §§ 404.1501 et seq. (1981). These regulations apply to claims that workers insured by reason of earnings covered by social security have become disabled under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.[3]

In an attempt to create an orderly and uniform framework for analysis and decision of disability claims, the Guidelines set out a fixed sequence of decision-making that Administrative Law Judges (ALJs) are required to follow. First, a determination is made whether a disability claimant · is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substan-

---

1. In *McCoy* and *Stack* no vocational expert was called. In *Desedare* an expert testified, but his evidence was restricted to the transferability of claimant's past work skills to other kinds of jobs. The regulations provide that an ALJ has the discretion to call a vocational expert when transferability of skills is determinative of disability. 20 C.F.R. § 404.1566(c). Whether or not an ALJ chooses to use vocational testimony, evaluation of transferability of skills must, of course, be made in light of a claimant's impairment. *See Martin v. Harris*, 666 F.2d 1153 (8th Cir. 1981).

2. We have jurisdiction because the district court certified each of these cases for interlocutory appeal under 28 U.S.C. § 1292(b), and we then granted leave to appeal. Absent this certification, there would be no appellate jurisdiction in this Court. We have several times held

that orders remanding cases to the Secretary for further proceedings are not final judgments appealable under 28 U.S.C. § 1291. *E.g., Mulholland v. Schweiker*, No. 82–1414 (8th Cir., Apr. 27, 1982) (unpublished order).

3. The same Guidelines also appear in Subpart I of Part 416, 20 C.F.R. §§ 416.901 et seq., which governs claims of disability by persons who meet a prescribed means test and therefore are eligible for supplementary security income (SSI) payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Although the three cases now before us are insured workers' claims rather than SSI claims, nothing turns on this difference. What we say in this opinion about the Guidelines applies equally to Subpart P of Part 404 and Subpart I of Part 416.

tial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant can perform relevant past work. If he can, a finding of no disability is required. Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy, despite his having a severe impairment that prevents return to his previous work. At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what he can still do physically even with his impairment, and also the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor. The criteria of age, education, and work experience are relevant because the statute specifies them in defining disability, 42 U.S.C. § 423(d)(2)(A). If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either "disabled" or "not disabled") directed by the relevant Rule or line of the applicable Table. There are three Tables contained in Appendix 2, which begins on p. 309 of 20 C.F.R. (1981). One Table applies to people whose RFC fits them to do only "sedentary work," Table 2 applies to those with an RFC for "light work," and Table 3 applies to those with an RFC for "medium work."

By way of illustration, the ALJ in Loyce McCoy's case found that Mr. McCoy was not engaged in substantial gainful activity,

that he did have a severe medically determinable impairment, that the severe impairment was not listed in Appendix 1, and that the claimant could not return to his past work. The inquiry then became whether Mr. McCoy could do other work. The ALJ found, as a medical fact, that the claimant had the RFC to do light work.[4] Using this finding, together with claimant's age, education, and work experience, the ALJ consulted Rule 202.11 in Table 2 of Appendix 2, which provides:

| RULE | AGE | EDUCATION | PREVIOUS WORK EXPERIENCE | DECISION |
|---|---|---|---|---|
| 202.11 | Closely approaching advanced age | Limited or Less | Skilled or semi-skilled—skills not transferable | Not disabled |

The ALJ therefore was required to find, and did find, that Mr. McCoy was not disabled. He did not call a vocational expert to testify as to whether claimant could perform other jobs.

The attack on this use of the Tables, or "grids," raises the question whether they make impossible the kind of individualized determination of capacity for employment that the statute and the variousness of the human condition require. Claimants assert, and the district courts essentially agreed, that the grids are an impermissible attempt to fit people into predetermined holes or slots, and that they contravene the statute by forbidding the very kind of vocational testimony that this and other courts, in pre-Guidelines decisions, have traditionally required. To these arguments we now turn.

### III.

■ Our inquiry begins, as it must, with the statute. Congress may of course define disability and prescribe how it must be proved. The Social Security Act, 42 U.S.C. § 423(d)(1), defines "disability" as follows:

(d)(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any

---

4. We recite this finding without, of course, intimating whether it is supportable on the record. One of the things that the district court will

need to do on remand is to decide whether the ALJ's finding as to RFC is supported by substantial evidence on the record as a whole.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

(2) For purposes of paragraph (1)(A)—

(A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Congress did not leave the matter with a mere statutory definition, however. It also required the Secretary to adopt regulations. 42 U.S.C. § 405(a) reads as follows:

(a) The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

■ This language is noteworthy in several respects. First, the Secretary is empowered, not simply to interpret the statute, but to make affirmative rules and regulations to carry it out, so long as they are "not inconsistent with the provisions of" the Act. Next, the second half of the sentence, beginning with the words "and shall adopt," is a materially different kind of provision

from the first half, the operative part of which begins, "shall have full power and authority to make." The indication is that as to the kinds of rules and regulations mentioned in the second half of § 405(a), the Secretary is not simply *empowered* to make rules, he is *commanded* to do so. And the description of the kinds of rulemaking that are required is significant: the rules and regulations are *both* "to regulate and provide for the nature and extent of the proofs and evidence" *and* to cover "the method of taking and furnishing the same." The rulemaking thus authorized, or required, clearly extends beyond mere procedural or housekeeping matters, such as might be comprehended within the phrase, "the *method* of taking and furnishing" the proof of disability (emphasis supplied). By mentioning also "the nature and extent of the proofs and evidence," Congress has authorized, if it has not required, the Secretary to issue regulations prescribing both the quality ("nature") and quantity ("extent") of evidence necessary to support a finding of entitlement to disability benefits.

Purely as a textual matter, the argument is strong that the Guidelines are within this statutory authorization. The Secretary has acted in an understandable desire to bring system and some degree of uniformity to the adjudication of hundreds of thousands of disability claims by ALJs all over the country. One would think that a decision as to what kinds of cases are appropriate for the testimony of vocational experts is squarely within the rubric "nature and extent of the proofs and evidence." On the other hand, any table that purports mechanically to determine whether an individual, unique human being can do a certain job must raise questions as to whether the fact-finding function is being so far simplified as to become unrealistic. With this problem in mind we turn to an examination of relevant Supreme Court precedent, the decisions of other courts of appeals on the validity of the Guidelines, and, perhaps most important, the safeguards and limitations that are built into the Guidelines themselves.

### A.

In *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977), the Supreme Court had before it the question of the validity of a regulation prescribing precise numerical standards for determining when the father of a needy child is unemployed. Eligibility for benefits payable to dependent children under Title IV of the Social Security Act, 42 U.S.C. §§ 601 et seq., turned on this definition. The statute, 42 U.S.C. § 607(a), said that whether a father is unemployed (that is, how much he is working) should be "determined in accordance with standards prescribed by the Secretary." In the course of an opinion upholding the challenged regulation, the Supreme Court noted first that "[o]rdinarily, administrative interpretations of statutory terms are given important but not controlling significance." 432 U.S. at 424, 97 S.Ct. at 2405. In the case before it, however, the Court attributed a greater significance to the Secretary's regulation:

> ... Congress in § 407(a) expressly *delegated* to the Secretary the power to prescribe standards for determining what constitutes "unemployment" for purposes of AFDC–UF eligibility. In a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the Secretary adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.
>
> The regulation at issue in this case is therefore entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), (C).

432 U.S. at 425–26, 97 S.Ct. at 2404 (footnotes and citation omitted).

To the same effect are *Herweg v. Ray,* —— U.S. ——, ——, 102 S.Ct. 1059, 1065, 71 L.Ed.2d 137 (1982), and *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). In the course of an opinion upholding a regulation of the Secretary under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (Medicaid), the Court said in *Herweg,* —— U.S. at ——, 102 S.Ct. at 1066:

> In view of Congress' explicit delegation of authority to give substance to the meaning of "available" [the statutory term in question], the Secretary's definition of the term is "entitled to more than mere deference or weight." *Schweiker v. Gray Panthers, supra,* [453 U.S.] at [44, 101 S.Ct. at 2640,] *quoting Batterton v. Francis,* 432 U.S. 416, 426 [97 S.Ct. at 2406] (1977). Because Congress has entrusted the primary responsibility of interpreting a statutory term to the Secretary rather than to the courts, his definition is entitled to "legislative effect." *Schweiker v. Gray Panthers, supra* ....

The Supreme Court has thus admonished us in strong terms that in the case of legislative, substantive regulations promulgated with express congressional authority, the Secretary of Health and Human Services, not the courts, is the primary interpreter of the statute. The language of 42 U.S.C. § 405(a), the statute invoked to authorize the Guidelines in question here, is different from that of the authorizing statutes in *Herweg, Gray Panthers,* and *Batterton,* but it is hardly less emphatic in the power delegated to the Secretary. We therefore approach our task mindful that those attacking the Guidelines must make a strong case of inconsistency with the statute if they are to succeed.

### B.

A number of other courts of appeals— seven, by our count—have discussed the Guidelines and considered their validity in one context or another. All of those courts except the Second Circuit, which has expressed reservations we shall discuss later in this opinion, have held or implied that the use of the "grid" as a substitute for the testimony of a vocational expert is not con-

trary to law. The First Circuit first gave what it called "qualified approval" to the regulations, *Torres v. Secretary of Health and Human Services*, 668 F.2d 67, 69 (1st Cir. 1981); *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662 (1st Cir. 1981); *Geoffroy v. Secretary of Health and Human Services*, 663 F.2d 315 (1st Cir. 1981), and later upheld them more generally, *Torres v. Secretary of Health and Human Services*, 677 F.2d 167 (1st Cir. 1982). The Third Circuit, in a comprehensive opinion handed down after the oral argument in these cases, has upheld the Guidelines, concluding after a careful analysis "that the degree of individualized consideration afforded to applicants for disability benefits is not significantly lessened by the Department's medical-vocational guidelines." *Santise v. Schweiker*, 676 F.2d 925 at 935 (3d Cir. 1982). The Fourth Circuit has also approved them, *Frady v. Harris*, 646 F.2d 143 (4th Cir. 1981),[5] and so has the Fifth, see *Thomas v. Schweiker*, 666 F.2d 999 (5th Cir. 1982); *Salinas v. Schweiker*, 662 F.2d 345 (5th Cir. 1981); *Perez v. Schweiker*, 653 F.2d 997 (5th Cir. 1981).

The Guidelines have also been referred to approvingly, though without extended discussion, by the Seventh, *Cummins v. Schweiker*, 670 F.2d 81 (7th Cir. 1982), and Tenth Circuits, *Hilton v. Schweiker,* No. 81–1139 (10th Cir., Feb. 26, 1982), *reh'g en banc granted* (July 2, 1982); *Chapman v. Schweiker*, No. 81–1025 (10th Cir., Feb. 26, 1982), *reh'g en banc granted*).[6] And the Sixth Circuit, in a thorough opinion on which both the Third Circuit in *Santise* and this Court in the instant cases have drawn heavily, has upheld the Guidelines as "a valid exercise of the Secretary's power to issue regulations pursuant to 42 U.S.C. § 405(a)." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 531 (6th Cir. 1981).

The exception is the Second Circuit, which has required ALJs, notwithstanding the applicability of the "grid," to identify particular jobs that he thinks the claimant can do, and to permit the claimant to introduce evidence that in fact he lacks the capacity to perform those particular jobs. See *Campbell v. Secretary of Dep't of Health and Human Services*, 665 F.2d 48 (2d Cir. 1981); *Decker v. Harris*, 647 F.2d 291 (2d Cir. 1981). These cases—or at least the *Campbell* opinion, where the issue was squarely presented and faced—do seem to hold that the Guidelines, to the extent that they direct a conclusion that jobs exist that a claimant can perform, without giving a claimant who precisely fits the Guidelines a chance to rebut that conclusion by testimony, are contrary to law and not to be followed. We are inclined to think that the Second Circuit's rule may well be fairer, at least in the context of individual cases, than the scheme of the Guidelines. But our analysis of the statute and the narrow reviewing function which the Supreme Court has left us in this area constrains us to hold that the Guidelines are not contrary to law.

■ The Secretary, after notice and comment procedures that are unquestioned, has issued rules finding as a legislative matter that jobs exist in the national economy that people with certain characteristics can perform. (Whether the claimant in fact *has* the required characteristics is still fully litigable in each and every individual case, as we shall make clear below.) This legislative finding was based on the Secretary's institutional experience in a vast number of disability cases and on the same documentary sources—*e.g.,* the *Dictionary of Occupational Titles* and other government sources—on which vocational experts are wont to draw when testifying. We doubt, as a practical matter, that vocational experts, who necessarily vary widely in their

---

**5.** *But see Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981), where another panel of the Fourth Circuit acknowledged that it was bound by *Frady* but expressed some misgivings about the use of the tables.

**6.** In *Hilton* and *Chapman*, the Tenth Circuit upheld the validity of the second step of the

decisional sequence, see text, *ante,* at pages 1141–1142, 20 C.F.R. § 404.1520(c), formerly 20 C.F.R. § 404.1503(c). The validity of the last step of the sequence was not squarely before the Court. The issue decided by these cases is not before this Court, and we express no opinion with respect to it.

knowledge and experience, are a more reliable source in the general run of cases than the materials on which the Secretary relied in the rulemaking proceeding. Normally a fact that is administratively or officially noticed in an adjudicatory proceeding is subject to rebuttal by evidence. See 5 U.S.C. § 556(e). But just as Congress in passing a law may find that certain facts exist, so an agency in issuing a legislative or substantive regulation may take certain facts as irrebuttably established, so long as this finding is not arbitrary and capricious, is within the authority delegated to the agency by statute, and is not in violation of the Constitution.[7]

That is exactly what has happened here. This is not an instance of an agency's announcing that it *will take* official notice of certain facts in future adjudicatory proceedings. Rather, the agency *has taken* official notice of certain facts by establishing them conclusively in a completed legislative rulemaking proceeding. The opportunity to rebut the facts found was given in the rulemaking proceeding itself. We stress, in addition, that the requirement, contained in the previous case law of some circuits, that specific jobs capable of being performed by the claimant be identified by the Secretary, is nowhere contained in the statute itself. In sum, for the reasons stated in this opinion and for the reasons given by the Third, *Santise v. Schweiker, supra,* 676 F.2d at pp. 938–939, and Sixth Circuits, *Kirk v. Schweiker, supra,* 667 F.2d at 530, we decline to follow the Second Circuit in partially invalidating the Guidelines.

### C.

A reading of the Guidelines themselves, in an effort to determine with particularity exactly when they apply and how they operate, fortifies our conclusion that we cannot permissibly declare them invalid.

1. In the first place, the Guidelines themselves state that the "grid" is not to be used unless a claimant fits one of the com-

binations of statutory criteria (RFC, age, education, and work experience) set out in the Rules of the three Tables at the end of Subpart P.

> Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations.

20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

"Thus, if the characteristics of the claimant do not *identically* match the description in the grid, the grid is only used as a guide to the disability determination," *Kirk v. Schweiker, supra,* 667 F.2d at 528 (emphasis ours); it cannot be controlling. A conclusion of disabled or not disabled is not directed "if an individual's vocational profile is not *precisely* contained in Appendix 2," *Santise v. Schweiker, supra,* 676 F.2d at p. 934 (3d Cir. 1982) (emphasis ours). *Accord, Thomas v. Schweiker,* 666 F.2d 999, 1004 (5th Cir. 1982) ("use of the Guidelines is inappropriate where their evidentiary underpinnings do not coincide *exactly* with the evidence of disability appearing on the record") (emphasis ours). If a claimant's relevant characteristics differ in any material respect from those of the grid, the Guidelines cannot be applied, and all the pre-existing requirements of case law, including the customary insistence on the use of vocational experts, retain their full vigor.

2. The underlying facts—RFC, age, education, and work experience—remain fully open to proof. And, with respect to those facts, the Guidelines "do not shift, or attempt to shift, the Secretary's burden of proof in disability matters." *Santise v. Schweiker, supra,* 676 F.2d at 938. That is, where, as here, the claimant has borne his

---

7. For the answer to the contention that the "grid" is unconstitutional because it establishes irrational irrebuttable presumptions, see *Kirk*

*v. Schweiker, supra,* 667 F.2d at 531–35 (6th Cir. 1981).

initial burden of proving that he cannot return to his past work because of a severe impairment not listed in Appendix 1, the burden shifts to the Secretary to prove with substantial evidence that the applicant has the RFC to do other kinds of work, and that his RFC, age, and so forth fit him to do some job that exists in the national economy. The grid, if applicable, establishes that jobs exist for certain kinds of people. The Secretary must still show that the claimant is a member of one of the groups described in the grid. This burden includes the duty to establish by medical evidence that the claimant has the requisite RFC.

█ This Court has consistently held that the ALJ must fully and fairly develop the record so that a just determination of disability may be made. *E.g., Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974). Claimants, especially those not represented by counsel, can hardly be expected to be familiar with the intricacies of the Secretary's Guidelines. Unless the ALJ informs a claimant at an early stage of the proceeding that the Guidelines may be used to determine disability, and that the claimant has a right to introduce evidence on the criteria of age, education, work experience, and RFC, as those elements are defined in the Guidelines and by this opinion, it may be difficult for a claimant to have a realistic opportunity to present his case. We note that the Guidelines themselves, 20 C.F.R., Appendix 2, § 200.00(a), are careful to provide that a claimant should have a meaningful opportunity to present evidence on the underlying factual findings. The Social Security Administration may wish to develop a pre-hearing notice form advising claimants of the application and contents of the Guidelines so that a claimant can come to the hearing prepared to present testimony and evidence relevant to the Guidelines. See *Hall v. Harris, supra*, 658 F.2d at 267

n.3. Otherwise, a claimant may not have a fair chance to address the real issues until the case reaches the Appeals Council level, at which point the time for oral testimony is past. Unless some means is devised to give claimants fair notice, at an appropriate early stage of the proceedings, of the real issues that are material under the Guidelines, there is a risk that the courts may have to remand for further hearings.

3. Probably the most important issue will be the question of RFC, and it is important to note how the Guidelines define it. Take the example of "light work." This category of exertional capacity is defined as the ability to lift up to 20 pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, and a good deal of walking or standing, or else sitting with some pushing or pulling of arm or leg controls. The grid does not apply if one's RFC is to do this kind of work only intermittently. The claimant must be able to perform "a full or wide range of light work," 20 C.F.R. § 404.1567(b), on a "sustained" basis, Appendix 2, § 202.00. The RFC that must be found if the grid is to be used, in the case of sedentary and medium work, as well as light work, is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.[8] See *Kirk v. Secretary of Health and Human Services, supra*, 667 F.2d at 528–29.

4. The other three criteria are less complex than RFC, but they are not so simple as they seem. Age is not always solely a matter of chronology. " 'Age' refers to how old you are (your chronological age) *and* the extent to which your age affects your ability to adapt to a new work situa-

---

**8.** It is for those reasons that this Court has held that as a general rule little weight is afforded to RFC checklists, *Gilliam v. Califano*, 620 F.2d 691, 693 (8th Cir. 1980), to reports of non-examining physicians, and reports of consulting physicians who examine the claimant only on one occasion, *Brand v. Secretary of Health, Education and Welfare*, 623 F.2d 523, 527 n.6

(8th Cir. 1980). This Court has recently held that fairness dictated that a claimant's treating physician be afforded an equal opportunity to address key issues with that of the Secretary's physician. *Woodard v. Schweiker*, 668 F.2d 370, 374 (8th Cir. 1982). As has been indicated, RFC will generally be the most important issue under the Guidelines.

tion and to do work *in competition with others.*" 20 C.F.R. § 404.1563(a) (emphasis supplied). Furthermore, the agency assures claimants that "we will not apply these age categories mechanically in a borderline situation." *Ibid.* "'Education' is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements ...," 20 C.F.R. § 404.1564(a), but "the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower." 20 C.F.R. § 404.1564(b). "'Work experience' ... applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). Findings must be made on each of these criteria, and the inquiry will be more or less involved depending on the unique facts of each individual case.

5. RFC is defined wholly in terms of the physical ability to perform certain exertional tasks. If a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony. See Appendix 2, § 200.-00(e). Nonexertional impairments include, by way of example, "mental, sensory, or skin impairments." *Ibid.* They also include "[e]nvironmental restrictions," which are "those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes." *Ibid.* Chronic impairment of respiratory processes producing sensitivity to "dust, excessive heat, and toxic fumes," is a nonexertional impairment, *Thomas v. Schweiker, supra*, 666 F.2d at 1004 (5th Cir. 1982). *Accord, Roberts v. Schweiker*, 667 F.2d 1143 (4th Cir. 1981). A psychiatric impairment is of course nonexertional. *Torres v. Secretary of Health and Human Services, supra.* So is chronic alcoholism. *Cannon v. Harris*, 651 F.2d 513 (7th Cir. 1981) (per curiam). And, as the First Circuit has held, *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 666 n.8 (1st Cir. 1981):

Pain may be a nonexertional factor to be considered in combination with exertional limitations as well as a separate and independent ground for disability. Where pain is considered as a separate ground for disability, of course, it must be severe enough to prevent the claimant from engaging in *any* substantial gainful employment. Where pain is considered in combination with exertional limitations, however, it need only be found significant enough to prevent the claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.

(Emphasis in original). For a listing of some nonexertional impairments, see also 20 C.F.R. § 404.1545(c), (d). If an individual has a combination of exertional and nonexertional impairments, the Guidelines are first considered to determine whether he is entitled to a finding of disability based on exertional impairments alone. If such a finding is not directed, the ALJ must then consider "how much the individual's work capability is further diminished" by nonexertional impairments. Appendix 2, § 200.-00(e)(2). "Also, in these combinations of nonexertional and exertional impairments which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case ...." *Ibid.* As was stated in *Torres v. Secretary of Health and Human Services, supra*, "to make review simpler and to avoid unnecessary reversal, it would make more sense for an ALJ to stay completely away from the guidelines where nonexertional impairments are so significant that the applicant does not possess the residual functional capacity on which the guidelines are predicated." 668 F.2d at 69 (footnote omitted).

**D.**

In sum, the "grid" applies to direct a conclusion of disabled or not disabled only in those situations covered by its own terms and the provisions of the Guidelines. It remains true that the "grid," in cases where it applies, eliminates the Secretary's duty to call a vocational expert witness. As the

district courts noted in these cases, our precedents on the necessity of calling vocational experts are at least as strong as any other circuit's. As we held in *Garrett v. Richardson*, 471 F.2d 598, 603–04 (8th Cir. 1972), when the burden has shifted to the Secretary to establish that a claimant can do work other than his past jobs, "[t]he burden of producing [a vocational expert] must rest with the hearing examiner and in the absence of substantial evidence from other sources bearing directly on the issues of 'substantial gainful activity,' the testimony of a vocational counselor is essential for the affirmance of an [ALJ's] findings."

We are not persuaded, however, that the conflict between the "grid" and our prior cases requires or permits us to invalidate the Secretary's Guidelines. The conflict is not so great upon examination as it may at first appear, as we have tried to show by our exploration of the Guidelines' terms and applicability. A large measure of individualized adjudication remains a necessary condition precedent to the "grid's" application, and our case law remains fully vital in those many cases where, for one reason or another, the "grid" does not apply. In the end, the Supreme Court's command that the regulations be given not mere deference, but legislative effect, is dispositive here. If "[a] reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner," *Batterton v. Francis, supra*, 432 U.S. at 425, 97 S.Ct. at 2405, it must also be true that a reviewing court may not set them aside simply because it has, in the pre-Guidelines past, interpreted the statute in a different manner.

We are not unmindful of the arguments forcefully urged by Legal Services of Eastern Missouri, Inc., as *amicus curiae*. We have said enough to indicate why we think most of those arguments are simply inconsistent with controlling principles of administrative law. We have read with interest the methodological and empirical critique submitted by the National Social Science and Law Project, Inc., when the Guidelines

were being considered by HEW, as it then was named.[9] Some of the objections raised were addressed by the agency's comments at the time the rules were initially promulgated. To the extent that they were not, we conclude that the objections, however arguable they may have been as an original matter, are not weighty enough to justify labeling the Guidelines as arbitrary and capricious. The Court is nevertheless grateful to the *amicus* for its participation.

### IV.

For the reasons stated, the decisions of the district courts that the Guidelines and "grid" must yield to our prior case law are vacated, and these causes are remanded to the respective district courts for further proceedings consistent with this opinion. The district courts should decide whether, on the records before them, the "grid," as interpreted and explained in this opinion, was in fact properly applied by the ALJ, and they should thereafter proceed to decide these cases as the law and the facts require.

It is so ordered.

---

**9.** Griffing & Richardson, *A Methodological and Empirical Critique of the Rules Proposed by the Social Security Administration for Adjudicating Disability Claims in which Vocational Factors Must Be Considered* (1978).