Benjamin **KIPHUTH**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

Civ. No. 4–84–4.

United States District Court,
D. Minnesota,
Fourth Division.

July 26, 1984.

George R. Ramier, Minneapolis, Minn., for plaintiff.

James M. Rosenbaum, U.S. Atty. by Paul W. Day, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

Plaintiff Benjamin J. Kiphuth seeks reinstatement of disability insurance benefits which were terminated by the Secretary of Health and Human Services (Secretary) under the Social Security Act, 42 U.S.C. §§ 416(i) and 423. An Administrative Law Judge (ALJ) denied plaintiff's claim, a decision which became the final agency action when the Appeals Council declined review. Plaintiff now seeks judicial review, and both parties have moved for summary judgment.

■ An ALJ's decision is conclusive only if supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *also see, Brand v. Secretary of HEW*, 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence means more than a scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir.1983). The reviewing court must go beyond a mere search for the existence of evidence supporting the ALJ's decision and take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *McMillian*, 697 F.2d at 220.

■ This court, after reviewing the record, finds that the ALJ's decision is not supported by substantial evidence. Indeed, it was only by distorting both the law and the evidence in this case and displaying a shockingly contemptuous attitude toward the plaintiff that the ALJ could reach his decision to terminate benefits. Accordingly, this court reverses the ALJ and orders summary judgment in favor of plaintiff.

Plaintiff Kiphuth, age 54, lives with his wife on 70 acres of swampland near Buffalo, Minnesota. He graduated from high school in 1947, served in the National Guard for two years and was active in the U.S. Army during the Korean War. He then worked as a heavy equipment operator in the construction trade until his heart attack in 1976. (T. 38–40).

Plaintiff first applied for, and was granted, disability benefits in 1976 following his extensive anterior wall myocardial infarction. These benefits were terminated after the Secretary decided that his disability had ceased in August 1982.

■ The Court of Appeals for the Eighth Circuit recently clarified the proper guidelines for evaluating cases such as the present one in which the Secretary terminates a recipient's disability benefits. In essence, the Eighth Circuit adopted a medical-improvement standard for these claims:

We ... hold that, in a disability-termination proceeding, there is a presumption that a claimant who has previously been determined to be disabled remains disabled. We also hold, in accordance with the Ninth Circuit's position, that the initial burden is on the Secretary to come forward with evidence which indicates that there is a legitimate reason to re-evaluate the claimant's right to receive benefits and which, if believed, would justify termination. The Secretary may meet this burden by showing that there was clear and specific error in the prior determination or by producing new evidence that the claimant's medical condition has improved, that the claimant has benefitted from medical or vocational therapy or technology, or that the claimant's condition is not so disabling as originally supposed.

If the Secretary does not meet this burden of production, the claimant will be deemed to be still disabled.

*Rush v. Secretary of Health and Human Services*, 738 F.2d 909 at 915–916 (8th Cir. 1984) (footnotes omitted).

The ALJ in the present case, Morton J. Goustin, took it upon himself to interpret the law on termination from his own startlingly distinct perspective. During the administrative hearing, the ALJ stressed to plaintiff—who was not represented by counsel—that any past determination of disability was of no consequence in the current termination proceeding:

A lot of people get the impression, maybe you have it too, maybe your Doctor has it too, that once you're put on disability benefits that is the end of it and you get disability for the rest of your life. Why? Because there's nothing in the law that talks about medical improvement. The Social Security Administration does not have to prove that your condition has improved, medical improvement [is] not taken into consideration.

Remarks of ALJ, T. 35.

Given this glaring misstatement of the law, it is perhaps not surprising that the

Secretary made absolutely no attempt in this case to meet the agency's burden of production. There is not a scintilla of evidence in the record to support any "legitimate reason" for reevaluating and terminating this claimant's benefits.

A review of the record in this case, even if taken from the perspective of analyzing an initial claim for benefits, overwhelmingly supports a determination of disability.[1]

The prognosis for this plaintiff has been bleak ever since his first heart infarction in 1976. In December of that year, Dr. P.M. Geiser wrote, "Because of his age I believe he will be rated permanently and totally disabled." (Exh. 11A). Six years later, the diagnosis remained essentially unchanged, as outlined in the following report by Dr. Perry J. Severance:

ASSESSMENT:

1. Coronary artery disease with documented anterior and inferior myocardial infarctions; history suggestive of past episode of congestive heart failure.

2. Obesity.

3. Possible hypertension.

DISCUSSION: At this time there is no doubt that this patient does have significant underlying coronary artery disease and that it probably is symptomatic to the point that it will interfere with his ability to perform any significant physical activity.... [P]atient was felt to have a relatively poor prognosis.

Exh. 15A.

In addition to his heart disease, plaintiff suffers from arthritis and obesity. (T. 37, 44). Pain pervades his chest and arms whenever he attempts to exert himself. (T. 45, Exh. 1). At night, fluid builds around his heart and he nearly chokes from congestion. (T. 44). His medications include Inderal, Cardioquin, Lasix, Sorbitrate, Motrin. (T. 43). He visits a chiropractor twice a week, when he can afford it, for ultra-sound treatment of his back and arms. (T. 42).

Plaintiff worked hard and long, up to 18 hours a day, at construction until forced to retire by his heart condition. (T. 44). His daily activities are now severely restricted, as the following exchanges with the ALJ demonstrate:

Q: What do you do outside of the house?

A: I watch birds, we got squirrels.

. . . . .

Q: Do you go downtown and drink coffee with the boys? Play cards? Pool?

A: No, no just drink coffee.

. . . . .

Q: What do you do with the garden?

A: I can't do anything in the garden because I can't my arms just get numb.

Q: Do you drive a car?

A: Up to 5, 10 miles then my arms fall asleep. I had a hell of a time today.

Q: Did you drive to the hearing today?

A: Partly, then she [his wife] did. My arms get numb and I got no feeling. I just can't anymore 'cause they hurt so bad.

. . . . .

Q. What do you do to keep yourself busy? You obviously were a very busy man, when you were working you were working 8 hours a day, took an hour to get to work and back, that's 9 hours from portal to portal. Now you got 24 hours a day to kill, nothing to do for 24 hours, what do you do?

A: It took about 3 years of Valium to get slowed down to this. I'm getting pretty damn nervous lately.

(T. 36, 46, 49, 50).

Despite unrebutted testimony at the administrative hearing and uniformly bleak medical reports, the ALJ seemed to have much difficulty accepting the fact that

---

1. The statutory requirements for a finding of disability mandate a showing that the claimant has a medically determinable physical or mental impairment which has or can be expected to last for a continuous period of at least 12 months or result in death and that the claimant cannot engage in any substantial gainful activity by reason of this impairment. 42 U.S.C. §§ 416(i) and 423; *also see, Yawitz v. Weinberger*, 498 F.2d 956, 960 (8th Cir.1974); *Rhines v. Harris*, 634 F.2d 1076, 1078 (8th Cir.1980).

plaintiff might be legitimately disabled. The ALJ's attitude toward this unrepresented plaintiff was clearly abusive throughout the hearing. The ALJ also found himself able to only thinly veil his apparent attitude that only the dead can be disabled. The following exchanges are instructive:

Q: Tell me Mr. Kiphuth, in you own terms without giving any fancy medical terms, why do you say that you can't return to the type of work you were doing? ...

A: I'm not a piker. I used to work 18 hours a day, I used to fly airplanes, I was in the service, I wish I had that all back.

Q: None of us can roll back the clock 40 years, I'd like to roll back the clock 40 years too, and I'd like to just go back to practicing law and make $200,000 a year, but I can't do that so that's life.

T. 43–44.

Q: How far can you walk? Can you walk a couple of miles?

A: Oh no. Couple 2 or 300 feet if I stop.

T. 46.–47. At this point, the ALJ doubted plaintiff's word and pointed to results of a treadmill test. Plaintiff countered by stating that he pushed himself far beyond his normal limits for that test:

A: As I said I laid for 3 days in bed too after I damn near died. He [his doctor] wouldn't have done this ordinarily but he wanted me to run as far as I could.... I wish the doctors could tell you what I looked like afterwards.

Q: WELL YOU'RE STILL HERE.

A: Barely.

Q: YOU DIDN'T LEAVE US, YOU'RE HERE.

T. 47 (emphasis added). Such an arrogant and antagonistic attitude on the part of the ALJ is, by itself, inexcusable. Coupled with the ALJ's flagrant misapplication and misinterpretation of the law, this entire administrative process proceeded as a shameful sham.

Several serious errors, in addition to the ones previously cited, were made by the ALJ.

■ The ALJ did not properly evaluate plaintiff's complaints of pain. Time and again, the Court of Appeals for the Eighth Circuit has stressed the proper pain standard, but many ALJs in this circuit persist in ignoring these well-established guidelines. *See Nelson v. Heckler*, 712 F.2d 346, 348 (8th Cir.1983); *Hillhouse v. Heckler*, 715 F.2d 428, 430 (8th Cir.1983). Pain may be a separate and independent ground for disability, or it may be considered in combination with exertional limitations. *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir.1982). A claimant need not produce objective evidence of pain, and the Secretary must give consideration to subjective complaints even if not corroborated by objective medical findings. *Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir.1984); *Tucker v. Schweiker*, 689 F.2d 777, 780–81 (8th Cir.1982); *Brand v. Secretary of HEW*, 623 F.2d 523, 526 (8th Cir. 1980).

■ In evaluating pain, an ALJ must give "full consideration" to such matters as the claimant's work record, observations by physicians, the claimant's daily activities, medications and functional restrictions. *Polaski, supra* at 1322. No such consideration was afforded plaintiff in the present case. Despite ample documentation in the medical records, (Exh. 15A, 16A, 18), the ALJ swept away the notion of a disabling pain with virtually no discussion.

■ The presence of a nonexertional limitation such as pain also precludes the use of the Secretary's Medical-Vocational guidelines to determine disability. *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir. 1982). In short, this means that the ALJ must proceed beyond a mere mechanical approach of matching a claimant's characteristics to a predetermined grid and instead must give individualized consideration to the individual's impairments. *Id.* Other evidence, such as the testimony of a vocational expert, is necessary to complete the evaluation. *Id.*

Here, the ALJ, contrary to law, relied upon the Secretary's guidelines in finding plaintiff to be not disabled. To explain away his failure to call a vocational expert, the ALJ casually stated that "the undersigned reserves a finding on the transferability of the claimant's work skills." (T. 12). It is the duty of an ALJ to develop the record and decide claims, not to reserve judgment on crucial aspects of a case. *Warner v. Heckler*, 722 F.2d 428 at 431 (8th Cir.1983); *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir.1981).

The ALJ also improperly discounted plaintiff's obesity as an impairment. Plaintiff is 5 feet, 7 inches tall and weighs about 221 pounds. The ALJ did state that plaintiff's weight "greatly aggravated" his medical condition. (T. 12). However, the ALJ went on to state that this could not be the basis for a disability because, in the ALJ's words, it is a "remedial condition." (T. 12). It is not evident how the ALJ made such a determination, which is clearly contrary to law. As the Eighth Circuit held in *Stone v. Harris*, 657 F.2d 210, 212 (8th Cir.1981):

> The agency is certainly not entitled to presumptions that obesity is remediable or that an individual's failure to lose weight is "wilful." The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte.

For the foregoing reasons, it is the opinion of this court that the ALJ's decision is not based upon substantial evidence and that plaintiff's disability benefits were improperly terminated.

Therefore, IT IS HEREBY ORDERED That plaintiff's motion for summary judgment be granted and that the matter be remanded to the Secretary for the purpose of calculating back benefits owed to plaintiff and reinstating current benefits.

Finally, the court notes that plaintiff's attorney in his motion for summary judgment requested an award of attorney's fees. This request was not considered as part of this motion. However, it would be appropriate for plaintiff's attorney, should he so desire, to move for an award of attorney's fees either immediately, based upon the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Cornella v. Schweiker*, 728 F.2d 978 (8th Cir.1984), or after the determination of back benefits, based upon the Social Security Act, 42 U.S.C. § 406(b).