956 F.2d 277
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Marvin BANKS, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 91-7081.
 United States Court of Appeals, Tenth Circuit.
 Feb. 18, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Marvin Banks appeals a district court order affirming the decision of the Secretary of Health and Human Services to deny his application for disability insurance benefits and supplemental security income, see 42 U.S.C. §§ 423(a), 1381a. The administrative law judge (ALJ) rejected Banks' allegation of disability commencing in 1981 finding him capable of gainful employment, and the Appeals Council denied Banks' subsequent request for review of the ALJ's decision.
 
 
 3
 Banks applied for benefits on July 22, 1988, claiming disability since 1981 due to "a head injury and leg trouble." App.Vol. II at 46 and 50-51. At that time, he was forty-five years old and had a tenth grade education. Id. at 25. Banks was last employed in 1981 as a production worker in California for a glass company. Id. 26-27. This job required frequent lifting and carrying of objects. Id.
 
 
 4
 An on-the-job injury in 1981 led to surgery in January 1982 for a herniated cervical disc. Id. at 141-53. Banks' postoperative course was relatively normal. In January 1984, Banks was examined by Dr. Robert B. Peoples, an orthopedic surgeon, in connection with a workers' compensation claim. Id. 161. In his report, Dr. Peoples noted that Banks suffered from pain across his left shoulder to his left upper arm, restricted motion in his cervical spine, and distinct atrophy of his left deltoid, pectoral, and upper left extremity muscles. Id. at 167. According to Dr. Peoples, Banks had a permanent partial disability that would preclude placing him in a physical situation where he would have to depend on his left extremity for heavy lifting or to prevent falling. Id. at 167-68.
 
 
 5
 In June 1985, Banks was hospitalized and underwent surgical removal of an aneurysm behind his right knee. Id. 172-80. Medical records from the clinic which treated Banks following the surgery indicate that Banks complained of pain in his leg on several occasions. Id. at 194-98. On August 25, 1985, the physician treating Banks at the clinic reported that Banks was using crutches. Id. at 194.
 
 
 6
 In January 1987, Banks was hospitalized for seizures. Id. at 181-93. Medical records state that Banks had a history of seizure disorders and was on medication for a while but had been off the medication without problems. Id. at 182. Banks was treated with Valium and Dilantin which stopped his seizure activity. Id. at 182-83.
 
 
 7
 After filing his claims for benefits, Banks was seen on September 23, 1988, by Dr. Mike Houghton, his treating physician. Id. at 200. Dr. Houghton reported in pertinent part that Banks ambulated with a cane and his gait was slow and guarded. Id. at 202. Banks informed Dr. Houghton that he could walk one-half mile without difficulty with the aid of a cane. Id. According to Dr. Houghton, there was significant loss of strength in Banks' right leg, id., and muscle atrophy in Banks' right leg necessitated his use of a cane, id. at 204.
 
 
 8
 At his hearing, Banks testified that he suffered from almost constant pain in his right leg, id. at 31-32, cramps in his left hand, id. at 36, and weakness in his left arm, id. Banks stated that the pain in his leg subsided when he sat down and kept the leg elevated. Id. at 32. Banks also related that he had been struck in the head with a hatchet in 1977 or 1978. Id. at 33. Banks' medical records indicate that a CT scan of his brain in February 1982 revealed a bony abnormality in the left temporal region from a previous trauma with underlying encephalomalacia. Id. at 160. Dr. Houghton linked Banks' seizures to this head trauma. Id. at 201. According to Banks, he could no longer read or write, and his ability to remember and organize things was getting progressively worse. Id. at 26 and 35-36. Banks noted that he continued to take Dilantin to control his seizures. Id. at 35.
 
 
 9
 The ALJ denied Banks' disability claims at the fifth step of the controlling process, i.e., after finding that (1) Banks was not gainfully employed, (2) Banks suffered from severe impairments, (3) Banks' impairments did not meet or equal one of the presumptively disabling impairments listed in the regulations, and (4) Banks was unable to perform the work he had done in the past, the ALJ concluded that (5) considering Banks' residual functional capacity (RFC), age, education, and work experience, he was able to perform other work and therefore was not disabled. See generally, Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (summarizing five-step evaluation process); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989) (same). In arriving at this final conclusion, the ALJ found Banks capable of performing a full range of light work, see 20 C.F.R. §§ 404.1567(b) and 416.967(b), and, relying for guidance on both the testimony of a vocational expert and the pertinent Medical-Vocational Guideline (grid), i.e., 20 C.F.R., Pt. 404, Subpt.P., App. 2, Table No. 2, Rule 202.18, determined that Banks could perform a significant number of jobs available in the economy. See generally Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir.1988).
 
 
 10
 The primary issue raised in this appeal is whether the ALJ's decision is supported by substantial evidence. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). Banks' arguments appear to focus for the most part on whether there was sufficient evidence to allow the ALJ to conclude that his nonexertional impairments, including pain, a mental impairment, and alcoholism, did not preclude him from performing a full range of light work. Our review of the record reveals an even more fundamental issue, i.e., whether there was substantial evidence to support the ALJ's finding that Banks had the exertional capacity to perform a full range of light work. The first issue is essentially subsumed by the second, since if Banks lacked the exertional capacity to perform light work, there is no need to consider whether nonexertional impairments imposed limitations on that capacity. We therefore turn to a review of Banks' exertional limitations.
 
 
 11
 The social security regulations define light work as follows:
 
 
 12
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.
 
 
 13
 20. C.F.R. § 404.1567(b). To be considered capable of performing a full range of light work, a claimant must have the ability to perform substantially all the foregoing activities. Id. Social Security Ruling 83-10 further explains that the ability to perform a full range of light work "requires standing or walking, off and on for a total of approximately six hours of an eight hour work day [, and] sitting may occur intermittently during the remaining time."
 
 
 14
 The ALJ found Banks capable of performing a full range of light work without citing the foregoing criteria or citing any specific evidence establishing Banks' tolerance for either prolonged standing and walking or frequent lifting. Apparently, the ALJ relied on residual functional capacity forms which consisted of checked boxes filled in by doctors who did not examine Banks but reviewed his medical records. App.Vol. II at 65 and 80. These forms do not establish Banks' residual functional capacity for light work for two reasons. First, it is well established in this circuit that such evaluation forms, unaccompanied by thorough written reports, are not substantial evidence. Frey v. Bowen, 816 F.2d 508, 515 (10th Cir.1987). More importantly, the forms in this case do not even indicate that Banks is capable of standing or walking for six hours out of an eight-hour work day as is required for light work. Instead, the boxes on the forms indicate that Banks can stand or walk for only two to four hours during an eight-hour day.
 
 
 15
 There is credible evidence that Banks cannot stand or walk for a significant length of time. As discussed above, Banks' medical records indicate that he has used a cane or crutch since shortly after the surgery on his right leg, which was almost three years before he filed his claims for benefits. Moreover, Dr. Houghton noted that Banks suffers from significant loss of strength in his right leg, and that Banks' use of a cane is medically necessary in view of muscle atrophy in Banks' right leg. As Banks' treating physician, the opinion of Dr. Houghton is entitled to substantial weight. Id. at 513.
 
 
 16
 The evidence of Banks' activities in the record do not indicate that he can perform light work. Banks' disability reports state in conclusory fashion that he makes his bed and has in the past cut grass, fed farm animals, and fixed a fence. App.Vol. II at 108, 113. At the hearing, Banks testified that he does some housework, drove occasionally, cooked for his son occasionally, watched football on TV, and had recently tried carrying firewood but quit when his arm and back became sore. Id. at 37-39. As discussed above, light work requires a good deal of standing, walking, and lifting of objects. Banks' ability to drive and cook occasionally, watch TV, and spend an unspecified amount of time cutting grass, feeding farm animals, and fixing a fence is not substantial evidence that he can spend much of an eight-hour day walking, standing, or lifting objects. Banks' activities in the record simply are not consistent with the conclusion that he can perform light work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982); see also Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir.1987) ("activities [which] were not conducted on a regular basis, [and did not] involve prolonged activity" did not establish the capability for light work).
 
 
 17
 The burden was on the Secretary to produce evidence that Banks could perform other work than that which he could perform before suffering impairments. Talbot, 814 F.2d at 1460. Here, the Secretary did not meet his burden of showing that Banks could perform light work. We conclude that further fact-finding is necessary because there is insufficient evidence as to Banks' residual functional capacity to perform sedentary work. In light of the uncertainty of Banks' exertional range, we need not address his nonexertional impairments.
 
 
 18
 Accordingly, we REVERSE and REMAND the judgment of the district court with instructions to remand the case to the Secretary to determine, after such proceedings as are deemed necessary, whether Banks can perform sedentary work as that term is defined in the social security regulations, see 20 C.F.R. § 404.1567(a), giving appropriate consideration to any nonexertional impairments.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3