994 F.2d 844
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Roy G. WESLEY, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.
 No. 92-2264.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: April 14, 1993.
Filed: May 4, 1993.
 
 Before FAGG, BOWMAN, and WOLLMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Roy G. Wesley appeals the judgment of the district court upholding the Secretary's decision to deny him social security disability benefits and supplemental security income (SSI) following a previous district court remand for the taking of vocational expert testimony. We reverse and remand with directions that disability benefits be awarded to Wesley.
 
 I.
 
 2
 Wesley sought benefits twice previously. The Secretary denied his applications initially, and Wesley did not seek further review. Wesley again applied for benefits in March 1985. The Secretary determined that although Wesley could not return to his prior very heavy work, he retained the residual functional capacity (RFC) to engage in light work. The district court upheld the Secretary's decision, finding that Wesley had a musculoskeletal and hypertensive condition which would preclude him from doing more than light work. Wesley did not appeal.
 
 
 3
 Wesley filed this third application for disability benefits in September 1987, and for SSI in November 1987. Wesley's disability insurance status expired on December 31, 1987. Thus, Wesley was required to prove that a disabling condition existed between September 30, 1985, the date of the Secretary's prior decision, and December 31, 1987. He alleged disability onset as of 1982 as a result of hypertension, head and leg injuries, and back problems (the latter including three ruptured discs).
 
 
 4
 Wesley, who was born on November 11, 1930, testified that he had not worked during the past six years. During the preceeding thirteen years he had done heavy factory labor. He had since tried to work a few odd jobs, but he could not "hold out." Wesley can read and write, but not well. He testified that he could sometimes walk a mile, stand for approximately one-half hour, and sit for a long time, but that he could not bend, kneel, or sit down without back pain. He also testified that Dr. Harbin, his treating physician, wanted him to have back surgery in 1987. He stated that he was in pain all of the time and that he took Maxzide, Enalapril, Motrin, and Advil for the pain.
 
 
 5
 The medical evidence from the period September 1985 to December 1987 showed that Wesley was often seen at the Veteran's Administration Hospital complaining of severe episodes of dizziness and headaches, arthritic pain, and recurrent low back pain. On July 21, 1987, an MRI showed significant intervertebral disc disease involving three discs: the lower two appeared to be ruptured, the third showed considerable bulging, and herniation was possible. Hospital personnel reported episodes of hyperglycemia, the possible need for back surgery, and stabilized hypertension.
 
 
 6
 Dr. Harbin wrote that Wesley was "unable to work at all" because of his herniated discs, that he required surgery, and that he suffered from episodes of back pain and weakness in the lower extremities. Dr. Harbin attached medical notes that showed prescriptions for Indocin and Flexeril. Dr. George Finley examined Wesley for the Social Security Administration (SSA) on the day Wesley's insured status expired and diagnosed hypertension under poor control, musculoskeletal pain, chronic low back symptoms and low back strain. Dr. Barry Green, an orthopedic surgeon, examined Wesley for the SSA on July 27, 1988, and determined that Wesley had had no surgery and that his chief complaint was low lumbar back pain. Although Wesley told him of his disc problems, Dr. Green reported that he was not authorized by SSA to obtain x-rays. He concluded that, assuming that the x-ray films would be normal, Wesley probably had treatable chronic ligamentous pain in his back.
 
 
 7
 In the face of this testimony and objective medical evidence, and despite the Secretary's determination in Wesley's 1985 applications that Wesley could do only light work, the Administrative Law Judge (ALJ) determined that Wesley retained the RFC to engage in medium work. Wesley sought judicial review, and the district court remanded, concluding that there was not substantial support in the record for the ALJ's conclusion that Wesley could do the full range of medium work.
 
 
 8
 On remand, a vocational expert characterized Wesley's past work as unskilled "medium lift work."[1] The ALJ did not list Wesley's impairments in the hypothetical as required, see Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990), but asked the vocational expert to assume that Wesley had the exertional capacity for medium work, that he experienced mild pain, and that he could not work in high places. The vocational expert agreed that if Wesley's pain was "mild," he could do light or medium work, but if it was "moderate," he could not do light or medium work.
 
 
 9
 The ALJ found that Wesley had severe degenerative disc disease of the lumbosacral spine with low back strain, hypertension, diabetes mellitus, and positional vertigo. He determined that Wesley had the RFC for medium work, reduced by the above limitations and his advanced age and limited skills. The district court affirmed the decision of the Secretary.
 
 II.
 
 10
 We may reverse the Secretary's decision if it is not based on substantial evidence. See Fleshman v. Sullivan, 933 F.2d 674, 675 (8th Cir. 1991). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). In reviewing for substantial evidence, we do not "merely parse the record for substantial evidence supporting the Secretary's decision"; we also "consider evidence in the record that detracts from the weight of the decision." Id.
 
 
 11
 The Medical-Vocational Guidelines require an ALJ to follow a fixed sequence of decision-making. McCoy v. Schweiker, 683 F.2d 1138, 1141 (8th Cir. 1982) (en banc). When the ALJ concluded that Wesley could not perform his past relevant work, the burden shifted to the Secretary to prove that Wesley had the RFC to do other kinds of work available in the national economy. See id. at 1146-47. An ALJ determines RFC, a medical factor, by considering what the claimant can still do physically even with his impairment, in light of the vocational factors of age, education, and relevant work experience. Id. at 1142. If the ALJ's findings as to these factors fit any of the combinations of criteria in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion directed by the relevant Rule or line of the Table. Id.
 
 
 12
 We conclude that the ALJ's finding that Wesley could do medium work is not supported by substantial medical evidence. Medium work requires a claimant to lift no more than fifty pounds at a time and to frequently lift and carry items weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c) (1990). Medium work also requires the claimant to do a good deal of walking or standing, or pushing and pulling of arm controls. Id. The claimant must have the ability to perform these requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. See McCoy, 683 F.2d at 1147.
 
 
 13
 The ALJ ignored the opinion of Wesley's treating physician, Dr. Harbin, that, based on the MRI results showing disc herniations, Wesley could not work at all. The opinion of a treating physician is entitled to great weight if, as here, it is properly supported by objective medical findings. See Fleshman, 933 F.2d at 676. The ALJ relied on the reports of consulting physicians who had examined Wesley only once and, at least in Dr. Green's case, without even the benefit of a back x-ray. Little weight should be given to such reports. McCoy, 683 F.2d at 1147 n.8. Additionally, the ALJ did not address those portions of the consultants' reports which benefited Wesley, such as Dr. Finley's findings that Wesley had trouble stooping, sitting, squatting, and bending, as well as Dr. Green's findings that Wesley's back flexion and extension were limited.
 
 
 14
 Wesley consistently reported to health professionals and to the ALJ that he could not work or stand for more than an hour or so. He stated that he could not lift, bend, kneel, or sit down without back pain. His complaints appear to be supported by the objective medical evidence. Thus, we conclude that Wesley did not have the RFC to do medium work. Because he could do at most light or sedentary work, the GRIDS direct a finding of disability in the light of his age, education, and relevant work experience. See 20 C.F.R. § 404, Subpart P, App. 2, Table No. 1, Rule 201.04, and Table No. 2, Rule 202.04 (1990).
 
 
 15
 Where a rehearing "would serve no purpose" or would simply delay the receipt of benefits, reversal is appropriate. Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982). Accordingly, we reverse the district court's judgment, and we remand the case with directions that Wesley be awarded benefits consistent with this opinion.
 
 
 
 [1]
 Wesley testified that his prior work required him to lift 85 to 105 pounds, which is in the "very heavy" work category, 20 C.F.R. § 404.1567(e) (1990). The ALJ had already found that Wesley could no longer do his past work