**Ruby Darlene BAILEY, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of the Department of Health, Education and Welfare, Appellee.**

No. 79–1254.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1979.

Decided Jan. 17, 1980.

Linda S. Pettit, Legal Aid Soc. of Polk County, Des Moines, Iowa, for appellant.

Alan M. Grochal, Atty., Social Sec. Division, Baltimore, Md., argued, and Barbara Allen Babcock, Asst. Atty. Gen., Wash-

ington, D. C., Roxanne Barton Conlin, U. S. Atty., Kermit B. Anderson, Asst. U. S. Atty., Des Moines, Iowa, on brief, for appellee.

Before LAY,* Chief Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Ruby Darlene Bailey, a sixty-two-year-old widow, appeals from a district court judgment affirming a finding by the Secretary of Health, Education and Welfare that she was ineligible for disabled widow's benefits under 42 U.S.C. §§ 402(e) and 423(d)(2)(B). We hold that Mrs. Bailey is entitled to benefits and reverse.[1]

There is no dispute as to the applicable statutes and regulations. To be entitled to benefits, a widow has the burden of proving that her physical and mental impairments "are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A widow claiming disability must show that her impairments meet the requirements set out in the listings of impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404.1501, et seq. (1979), or that her impairments are equal in severity to those listings. 20 C.F.R. § 404.1504 (1979).

Substantial evidence on the record as a whole does not support the Secretary's finding that Mrs. Bailey was not disabled. To the contrary, Mrs. Bailey clearly established that as of January 1, 1975, she was permanently precluded from engaging in any gainful activity. She testified that she was unable to work because of her physical and mental impairments and this was supported by lay and medical testimony. No examining doctor gave a contrary opinion.

Several doctors, psychiatrists and psychologists examined Mrs. Bailey. Each of them reported that she was unable to work. On June 17, 1975, Dr. J. H. Hege, Sr., reported that Mrs. Bailey was unable to work; in both September of 1975 and April of 1976, Dr. Joseph Glissman reported that she was unable to function in competitive employment; on January 27, 1975, Dr. Thomas B. Summers reported that Mrs. Bailey was incapable of gainful employment; in September of 1977, Dr. Allen Silberman reported that she was incapable of coping with the demands and stresses of a competitive work environment; and on October 20, 1977, Dr. Gaylord Nordine reported that he doubted that Mrs. Bailey could function in a competitive situation outside of the home.[2]

---

* Judge Donald P. Lay became Chief Judge on January 1, 1980.

1. The Secretary initially denied disability benefits to Mrs. Bailey in December, 1975. Mrs. Bailey challenged this decision in district court. The court remanded the matter to the Secretary with directions to take additional testimony with respect to Mrs. Bailey's mental disabilities. A second hearing was held in October, 1977, and additional evidence as to Mrs. Bailey's physical and mental disabilities was received. The administrative law judge filed his revised findings and decision denying benefits to Mrs. Bailey in February, 1978. The Secretary adopted that decision. Mrs. Bailey again challenged the Secretary's decision in the district court. The court held that the Secretary's finding that Mrs. Bailey's impairments, either singularly or in combination, were not severe enough to be totally disabling is supported by substantial evidence.

2. The district court finds substantial support for the Secretary's opinion that Mrs. Bailey does not have a listed impairment in the medical reports of Drs. Nordine and Glissman. We are unable to find such support in Dr. Glissman's report. The doctor wrote as follows:

SUMMARY:

This is a 58 year old woman who has had chronic iron deficiency and anemia throughout her life time which has been a problem to her. She was able to work in a helping fashion with her husband and also able to take care of her own home, children and was quite content to do this even before her husband's death. Also before her husband's death, she was considered to be unable to

The Secretary argues for the first time on appeal that the medical testimony does not support Mrs. Bailey's claim to disability because some of that testimony indicates that even though she cannot work in a competitive economy, she is capable of performing routine, repetitive tasks in a sheltered situation and that such capabilities establish her ineligibility for disability benefits. He cites no statute or case to support this position and our research has failed to reveal any authority for it. The regulations do provide that in certain circumstances, *work* in a sheltered workshop may provide evidence of skills and abilities that demonstrate an ability to engage in a substantial gainful activity, 20 C.F.R. § 404.-1532 (1979),[3] but Mrs. Bailey has never worked in such a workshop and there is no evidence to indicate that such a workshop is available to her or that, if one were, her earnings in such a workshop would be attributable to her productive capabilities as distinguished from subsidies relating to her financial needs. 20 C.F.R. § 404.1534 (1979).[4] Moreover, the doctors' statements

handle babysitting to the extent that she could not have a license for this. Following her husband's death, she had a rather extended grief reaction. She has recovered somewhat from this but is still prone to grieve for him and also is very unhappy about her loss of dependency sources. She really has never seen herself as a self-sufficient person and doesn't see herself as being that now. Her age plus her real problem with iron deficiency, anemia, mild diabetes, obesity and life long history of dependency plus a general tendency to be perfectionistic and unable to cope with stress at all make her unemployable in a competitive market. It seems that she does and can function adequately in a protected setting. [The protected setting referred to is apparently the home.]

DIAGNOSIS:

Psychoneurosis, Anxiety State in a person with Underlying Dependent Compulsive Personality with Depressive Trends. She is able to handle any funds which may be due her.

We are also unable to find support for the Secretary's opinion in Dr. Nordine's report. He states:

I believe [Mrs. Bailey] lacks the social skills necessary to work in a competitive situation at this time. However, I believe she could acquire sufficient skills to do some work in a vocational program of some type. A combination of supportive psychotherapy and vocational assistance could be very helpful to her. Until such services have been provided, I doubt she could function very effectively in any competitive work situation outside her home.

The evidence indicates that Mrs. Bailey has received supportive psychotherapy and has not responded. Further, there is no showing in the record that any vocational programs are available.

3. In pertinent part, that section reads as follows:

(b) *Substantial gainful activity defined.* Substantial gainful activity refers to work activity that is both substantial and gainful.
\* \* \* \* \* \*

(d) *Adequacy of performance.* \* \* \* "Made work," that is, work involving the performance of minimal or trifling duties which make little or no demand on the individual and are of little or no utility to his employer, or to the operation of a business, if self-employed, does not demonstrate ability to engage in substantial gainful activity.

(e) *Special employment conditions.* Work performed under special conditions of employment which take account of the employee's impairment (for example, work in a sheltered workshop or in a hospital by a patient) may, nonetheless, provide evidence of skills and abilities that demonstrate an ability to engage in a substantial gainful activity, whether or not such work in itself constitutes substantial gainful activity (see § 404.1534(b) and (c)).

4. In pertinent part, that section reads as follows:

(a) *General.* \* \* \* [A] mentally handicapped individual who performs simple tasks subject to close and continuous supervision would not have demonstrated ability to engage in substantial gainful activity solely on the basis of the rate of his remuneration for such activity. \* \* \* Earnings received by an employee which are not attributable to his work activity are not considered in determining his ability to engage in substantial gainful activity. Thus, where an individual engages in work activity as an employee under special conditions (see § 404.1532(e)), only earnings attributable to the individual's productivity, as distinguished from a subsidy related to other factors (e. g., his financial needs), are considered in determining his ability to perform substantial gainful activity.

(b) *Earnings guidelines.* \* \* \*
\* \* \* \* \* \*

(2) *Earnings that will ordinarily show that a person has not done substantial gainful activity.* We will ordinarily consider that a person's earnings from work activity as an employee show that he or she has not done substantial gainful activity if—

were too vague to permit the inference that she could be productive even in a sheltered workshop.

█ In our view, Mrs. Bailey also established that her physical and mental impairments met the requirements set out in the listing of the impairments. The regulations specifically list functional nonpsychotic disorders as an impairment. These disorders must be manifested by recurrent and persistent periods of anxiety with tension and apprehension which result in a restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people. 20 C.F.R. § 404.1501, et seq., App. 1 § 12.04 (1979). The evidence establishes that Mrs. Bailey is so impaired.

When the medical testimony is thoroughly analyzed, the following picture emerges clearly.

Mrs. Bailey graduated from high school as an honors student. Shortly after graduation, she was married. She and her husband reared four children of their own and a number of his brother's children. Mrs. Bailey was dependent on her husband. He did the shopping, managed all the family's financial affairs, and made all major family decisions. After Mr. Bailey's death in 1974, Mrs. Bailey was lost and was literally overwhelmed by pre-existing medical problems, including borderline diabetes, anemia, chronic bronchitis, obesity, bladder and kidney infections and depression brought on by the death of her husband. She had a hysterectomy in 1974 and gall bladder surgery in 1976. She was hospitalized for depression in 1976. She remains rather heavily medicated.

█ She was examined by a number of psychiatrists and a psychologist. They uniformly reported that her daily activities had been markedly restricted, that she had lost interest in the activities she formerly pursued with her husband and that she had not substituted any new activities for those dropped. They also uniformly reported that she had persistent periods of anxiety coupled with tension and apprehension, and that she was unable to cope with stress. Only one doctor, C. A. Ross, a consultant for the Social Security Disability Determination Division, stated that she did not meet or equal the "impairment listings." That doctor did not examine Mrs. Bailey and based his opinion solely on medical reports filed before February 18, 1975.[5] Unfortunately, Dr. Ross did not review the medical reports made after February of 1975. The administrative law judge, however, relied on this report when he stated in his second decision: "In evaluating the overall severity of the claimant's impairments in combination, [I note] that a physician designated by the Secretary has stated that the claimant's impairments do not meet or equal the level of severity described in the [regulations]."

█ Finally, we note that the administrative law judge's finding that the record contains no evidence of marked restriction of daily activities or constriction of interests simply has no support in the record.

We reverse the district court and remand with directions to order the Secretary to pay disability benefits to Mrs. Bailey as of January 1, 1975.

---

*   *   *   *   *   *
(ii) Earnings averaged less than $150 a month in calendar year 1976 * * *.

**5.** This Court has consistently held that while opinions of non-examining physicians may constitute substantial evidence for consideration, they deserve little weight in the overall evaluation of disability. *Veal v. Califano,* 610 F.2d 495 (8th Cir. 1979); *Thorne v. Califano,* 607 F.2d 218 (8th Cir. 1979); *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir. 1974).