Bertha M. BRENNER, Appellant,

v.

Richard SCHWEIKER, Secretary of Department of Health and Human Services of the United States, Appellee.

No. 82–2370.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1983.

Decided July 5, 1983.

Evan L. Hultman, U.S. Atty., Robert L. Teig, Asst. U.S. Atty., N.D. Iowa, Cedar Rapids, Iowa, for appellee; Paul P. Cacioppo, Regional Atty., Kenneth J. Cain, Atty., Dept. of Health and Human Services, Kansas City, Mo., of counsel.

John Lansing Brown, Legal Services Corp. of Iowa, Dubuque, Iowa, for appellant.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL,* Senior District Judge.

McMILLIAN, Circuit Judge.

Bertha Brenner appeals from a judgment entered in the District Court for the Northern District of Iowa affirming a denial of supplemental security income (SSI) disability benefits by the Secretary of Health and Human Services (Secretary). For the reasons discussed below, we reverse and remand this case.

On June 9, 1980, appellant applied for SSI benefits alleging a disability due to mental retardation. After her claim was denied initially and on reconsideration, appellant appeared before an administrative law judge (ALJ); appellant was represented by a paralegal from a legal services organization. The ALJ denied benefits. The Appeals Council affirmed.

At the time of the December 19, 1980, administrative hearing, appellant was forty-one years old. She testified that although she had a seventh grade special education, she had difficulty with reading, writing and mathematics. Appellant further testified to severely restricted daily activities. She has always lived with family members and can only perform household tasks, such as cooking or grocery shopping, with the assistance of others. Appellant has no relevant work experience. In addition, appellant testified that she was nervous and uncomfortable around people.

At the request of the Secretary, a clinical psychologist, Gretchen Lee, evaluated appellant. Based on the results of a Weschler Adult Intelligence Scale (WAIS) examination, Ms. Lee reported that appellant had "borderline intellectual functioning"; appellant had a verbal scale IQ of 65, a performance scale IQ of 91, and a full scale IQ of 75. Ms. Lee believed that appellant's "greatest deficit" was her lack of an attention span and lack of motivation. Ms. Lee concluded that appellant would not "tolerate employment other than in a sheltered workshop setting whereby goals are short term with a great deal of opportunity for social interaction." Ms. Lee noted appellant "enjoyed social interaction" and "loved to talk."

At the request of appellant's representative, psychologist Beverly Adams also evaluated appellant. Ms. Adams administered a battery of intelligence and psychological

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

tests. Ms. Adams agreed with Ms. Lee's assessment of appellant's intelligence but disagreed as to appellant's tolerance for social interaction. According to Ms. Adams, personality testing revealed that appellant was withdrawn, had "difficulty understanding and meeting expectations of social interaction," and consequently maintained an "isolationist lifestyle." Ms. Adams agreed with Ms. Lee's conclusion that appellant would not tolerate employment other than in a sheltered workshop. Ms. Adams, however, believed that "[u]ntil such time as [appellant] becomes comfortable in social settings, the interaction necessary in such a workshop setting would act as a deterrent to participation."

After the hearing, the ALJ submitted a written hypothetical question to a vocational expert concerning the availability of competitive jobs in the national economy for appellant. The question assumed that appellant had borderline intelligence, limited educational skills, no past work experience, and "difficulty with social interaction." Somewhat inconsistently, the question also assumed that appellant could "communicate and cooperate with others and exercise independent judgment." The expert responded that a number of unskilled jobs, such as an office helper or cafeteria attendant, would be available. Appellant's representative also submitted a hypothetical question to the expert. The representative's question, however, deleted the ALJ's reference to appellant's alleged ability to work with others and exercise judgment and included a reference to her "isolationist lifestyle." The expert then responded that no jobs would be available.

The ALJ denied benefits, finding that appellant had the ability to perform substantial gainful activity, as evidenced by the vocational expert's response to the ALJ's hypothetical question. The ALJ noted "that is not to say that claimant ever will perform any of those jobs."

 This court must affirm the findings of the Secretary if they are supported by substantial evidence. *Brand v. Secretary of Department of Health, Education and Welfare,* 623 F.2d 523, 527 (8th Cir. 1980). In this case, there is a total lack of evidence to support the finding that appellant is capable of substantial gainful activity. To the contrary, the evidence overwhelmingly supports the conclusion that appellant is disabled.

The evidence from the psychologists is that appellant, under the most tolerant of conditions, could perhaps perform some sort of activity in a sheltered workshop. In *Bailey v. Califano,* 614 F.2d 146 (8th Cir. 1980), this court rejected speculation as to a claimant's ability to engage in workshop activity as evidence of an ability to perform substantial gainful activity. We noted that the "regulations do provide that in certain circumstances, *work* in a sheltered workshop may provide evidence of skills and abilities that demonstrate an ability to engage in substantial gainful activity." [1] *Id.* at 149 (emphasis in original). However, Ms. Bailey had "never worked in such a workshop and there [was] no evidence to indicate that such a workshop [was] available to her and that, if one were, her earnings in such a workshop would be attributable to her productive capabilities as distinguished from subsidies relating to her needs." [2] *Id.* Such is also the case here.

---

1. 20 C.F.R. § 416.973(c) (1983) (formerly codified at 20 C.F.R. § 416.932(e) (1980)) provides:

 (c) *If your work is done under special conditions.* Even though the work you are doing takes into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital, it may still show that you have the necessary skills and ability to work at the substantial gainful activity level.

2. *Id.* at § 416.974(2), (3) (1983) (formerly codified at 20 C.F.R. § 416.934(a) (1980)) provides in pertinent part:

 (2) *We consider only the amounts you earn.* We do not consider any income not directly related to your productivity when we decide whether you have done substantial gainful activity. If your earnings are being subsidized, the amount of the subsidy is not counted when we determine whether or not your work is substantial gainful activity. Thus, where work is done under special conditions, we only consider the part of your pay which you actually "earn". For example, where a handicapped person does simple

In addition, we reject the Secretary's reliance on the vocational expert's response to the ALJ's hypothetical question as substantial evidence that appellant had the ability to perform a variety of unskilled jobs in a competitive work setting. A hypothetical question to a vocational expert must accurately set forth a claimant's impairments and resulting functional limitations so that the expert can realistically assess the availability of jobs. *Camp v. Schweiker,* 643 F.2d 1325, 1332–33 (8th Cir.1981). Here, there is no record support for the ALJ's assumption that appellant could cooperate and communicate with others and exercise independent judgment in a competitive work setting. Appellant's testimony of her daily activities, which the ALJ expressly found credible, supports Ms. Adams' conclusion that appellant was withdrawn and isolated from others. Even assuming record support (which we find lacking) for Ms. Lee's comment that appellant "enjoyed social interaction" and "loved to talk," that comment is hardly evidence of appellant's ability to interact with others in a competitive work setting.

Accordingly, the judgment is reversed and the case is remanded to the district court with directions to remand the claim to the Secretary to award appellant SSI benefits.[3]

---

tasks under close and continuous supervision, we would not determine that the person worked at the substantial activity level only on the basis of the amount of pay. An employer may set a specific amount as a subsidy after figuring the reasonable value of the employee's services. If your work is subsidized and your employer does not set the amount of the subsidy or does not adequately explain how the subsidy was figured, we will investigate to see how much your work is worth.

 (3) *If you are working in a sheltered or special environment.* If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid.

**3.** The ALJ also erred in failing to evaluate appellant's impairment under the Listing of Impairments. 20 C.F.R., Part 404, Subpart P, App. 1 (1983) (formerly codified at 20 C.F.R., Part 416, Subpart I, App. 1 (1980)). Section 12.05C provides that a finding of disability due to mental retardation is required if a claimant has an "IQ of 60 to 69 inclusive ... and [another] mental impairment imposing additional and significant work-related limitation of function." Section 12.00B4 requires that a standardized IQ test, such as the WAIS, be administered, and that if the test yields more than one IQ score, the lowest score must be used. In our view, appellant's impairment meets the criteria of the Listing. As discussed in the text, appellant's lowest WAIS score was a verbal IQ of 65 and the evidence is that appellant has additional mental impairments that significantly limit her ability to work.