Barbarita HIGH, Plaintiff,

v.

Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.

No. 83–1174–CV–W–9.

United States District Court, W.D. Missouri, W.D.

April 30, 1985.

Dennis W. Jennings, Sharon J. Meyers, Kansas City, Mo., for plaintiff.

Paul P. Cacioppo, Regional Atty., Region VII, Dept. of H.H.S., Kansas City, Mo., for defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

Plaintiff seeks review of the final decision of the Secretary of Health and Human Services (Secretary) denying her application for disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C.

§§ 401, *et seq.,* and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381–85. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Secretary under Titles II and XVI.

On July 12, 1982, plaintiff Barbarita High filed a claim for disability insurance benefits. On July 29, 1982, plaintiff filed a claim for SSI benefits. The Secretary made initial determinations and denied benefits on August 5, 1982, and August 11, 1982. The Secretary denied plaintiff's requests for reconsideration on October 13, 1982, and December 16, 1982. On March 1, 1983, a hearing was held before an Administrative Law Judge (ALJ). On May 31, 1983, the ALJ found that plaintiff was not disabled as defined in the Act. On August 29, 1983, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Secretary.

This action is before the Court on cross-motions for summary judgment. Upon consideration of the briefs in support and in opposition, and for the reasons stated below, plaintiff's motion for summary judgment will be granted.

■ The standard for judicial review by this Court is whether the decision of the Secretary was supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Hancock v. Secretary of Dep't. of H.E.W.,* 603 F.2d 739, 740 (8th Cir.1979). The determination of whether the Secretary's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Secretary's decision.

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983).

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Once this is established the burden shifts to the Secretary to prove that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. *O'Leary v. Schweiker,* 710 F.2d 1334, 1337 (8th Cir. 1983).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled or not. The regulations referred to generally as Medical-Vocational Guidelines are codified in 20 C.F.R. §§ 404.1501, *et seq.* (1983), and in 20 C.F.R. §§ 416.901, *et seq.* (1983). The Eighth Circuit Court of Appeals summarized this evaluation process in *McCoy v. Schweiker,* 683 F.2d 1138, 1141–42 (8th Cir.1982) (en banc).

In an attempt to create an orderly and uniform framework for analysis and decision of disability claims, the Guidelines set out a fixed sequence of decision-making that Administrative Law Judges (ALJs) are required to follow. First, a determination is made whether a disability claimant is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substantial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant can perform relevant past work. If he can, a finding of no disability is required.

Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy, despite his having a severe impairment that prevents return to his previous work. At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what he can still do physically even with his impairment, and also the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor. The criteria of age, education, and work experience are relevant because the statute specifies them in defining disability, 42 U.S.C. § 423(d)(2)(A). If the ALJ's findings as to RFC, age, education and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either "disabled" or "not disabled") directed by the relevant Rule or line of the applicable Table....

The ALJ concluded 1) that plaintiff suffered from the following severe impairments: a) poorly controlled diabetes mellitus; b) controlled hypertension; c) obesity; and d) cervical radiculopathy affecting the upper left extremity; 2) that plaintiff could not perform her past relevant work; 3) that plaintiff could perform sedentary work, and 4) therefore, plaintiff was not disabled.

■ It is the Secretary's obligation to develop fully and fairly the record of the administrative proceeding. *Brissette v. Heckler*, 730 F.2d 548, 549 (8th Cir.1984);

*Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983). Implicit in that duty is the requirement that the Secretary present a complete record for this Court to make a determination whether substantial evidence exists to support the Secretary's findings. This Court has repeatedly admonished the Secretary for incomplete transcripts and illegible copies of medical records.[1] E.g., *Blanton v. Heckler*, No. 83–1073–CV–W–9, slip op. at 7 (W.D.Mo. November 26, 1984); *Shoot v. Heckler*, No. 82–0709–CV–W–9, slip op. at 6 (W.D.Mo. April 9, 1985).

■ The transcript of plaintiff's testimony before the Administrative Law Judge contains 105 "INAUDIBLE" designations which omit portions of plaintiff's testimony. It is impossible to determine from the transcript whether each "inaudible" stands for only one missing word or multiple missing words.

Some of the testimony which is peppered with "INAUDIBLES" is critical to the issues presented by the appeal. For example, when asked about her prior employment, plaintiff's response is recorded as: "I worked at 'INAUDIBLE' Toy from 1968 to 19 ..... to 1980. The first job, first phase of the job, I ran the lowest machine, the 'INAUDIBLE' as a hoser 'INAUDIBLE' both my hands and by machine." Tr. 36–37. When asked how much weight she lifted at her prior employment, plaintiff's response is recorded as: "Oh, it varied from 25 to 30, 35 'INAUDIBLE'." Tr., 38. When asked about discomfort when she stands, plaintiff's response is recorded as: "Yes, my back 'INAUDIBLE'." Tr. 47. When asked whether she wears glasses,

---

1. At a hearing held on January 25, 1985, in *Peterson v. Heckler*, No. 83–0857–CV–W–9, the Court reminded the representative of the Secretary of her obligation to provide a reliable transcript.

> If this transcript is typical of virtually every one we get, I can only tell you that I am fearful that it is only a matter of time before I make some ruling against Ms. Heckler based on the fact that it seems to me it is her responsibility to provide a legible, intelligent transcript of what happens, and that if the parties and I are unable to make heads or tails of what the transcript says, it seems to

me the responsibility of that must be placed at her doorstep.

> I am sure the technology exists. I am sure there are personnel available who could accurately transcribe what happens at these hearings.

> In light of the importance to the plaintiffs of as prompt a resolution of their claims as possible, and in light of the importance of the transcript of the hearing to the prompt resolution of plaintiffs, it seems to me that the Secretary really can do a better job, and should do a better job.

plaintiff's response is recorded as "I needs it but 'INAUDIBLE'." Tr. 51. When plaintiff was asked whether she had diabetic retinopathy, the transcript reads as follows:

A And he also checks the .... the blood vessels in the back of the eye and certain little 'INAUDIBLE' he knows, I don't know, this "INAUDIBLE" that he watches closely and for glucoma [sic].
Q Alright [sic]
A 'INAUDIBLE' watch that and so far, it's nothing but just far sightedness and this blurriness 'INAUDIBLE'.

Tr. 55–56.

When asked whether she follows her diet, plaintiff responded (according to the transcript): "A There's times 'INAUDIBLE' naturally but 'INAUDIBLE' I follow the diet. I'm under oath, Q Pardon me? A I'm under oath, so I'm telling the truth 'INAUDIBLE'." (Tr. 62).

When asked about pain in her left arm, plaintiff responded:

A Some of the doctor tells me I have some "INAUDIBLE" right at the back of the neck, where the nerve comes down and it affects this nerve, it controls the left arm.
Q Alright [sic]
A And the pain, I have the pain, goes across the shoulder down to the .... radiates down to the fingers, fingertips and it hurts just something terrible. I really have "INAUDIBLE" an just kind of "INAUDIBLE" because of the neck brace, but this has given me a terrible time and right now, I can hold things in my hand and drop them and not be even aware that I drop.
Q "INAUDIBLE".[2]
A Yes

Tr. 49–50.

In considering an appeal from the Secretary's determination, the claimant's testimony is frequently of crucial importance. The Secretary, not plaintiff, must bear responsibility for the inadequate transcript of plaintiff's testimony.

■ Remand to the Secretary because of the inadequate transcript would penalize the plaintiff who filed her disability claim on July 12, 1982. If the Secretary does not have the equipment to record the administrative hearing adequately and completely, and if the Secretary does not have trained personnel to transcribe the proceedings accurately and completely, then she, not the plaintiff, must suffer the consequences. If the problem was that the plaintiff did not testify clearly, the responsibility for assuring an adequate recording rests with the ALJ. The Secretary should expect that every appeal with an administrative record as incomplete and unreliable as this one will be ruled against the Secretary. This Court will not remand a Social Security disability case on the basis of an inadequate record where the failure to produce an adequate record is entirely the fault of the Secretary.

■ Substantial evidence, independent of plaintiff's testimony, exists to support the Secretary's finding that plaintiff could not return to her past relevant work. Therefore, the burden of persuasion shifted to the Secretary to establish by substantial evidence that plaintiff could perform some other work that exists in the national economy. *McCoy,* 683 F.2d at 1146–47. The incomplete and unreliable transcript of plaintiff's testimony is not substantial evidence. Further, even if the Court considers only the understandable portions of the transcript, and the medical records, the Secretary's finding that there are jobs in the national economy that plaintiff can perform was not supported by substantial evidence.

The ALJ found that plaintiff possessed the residual functional capacity (RFC) to perform sedentary work. RFC "is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform

---

**2.** The possibilities for what this question was are legion. Some possibilities are:
 1) Are you exaggerating?

2) Did you scream because of the pain?
3) Are you having a seizure?
4) Isn't the weather nice?

the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy*, 683 F.2d at 1147. There is no evidence in the record that plaintiff can perform sedentary work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In fact, there is substantial evidence in the record that plaintiff cannot perform sedentary work on a regular basis.

Plaintiff suffers from poorly controlled diabetes. In addition, she suffers from a degenerative spine condition for which physicians have prescribed a soft cervical collar and traction. She regularly takes large doses of NPH and regular insulin for diabetes. Plaintiff also suffers from hypertension which is well-controlled through the use of medication, e.g., aldomet, hydrochlorothiazide, and potassium. In a report dated February 18, 1983, plaintiff's treating physician, Dr. Simmons, stated that plaintiff cannot perform sedentary work. Tr. 160–62.

■ Even if there were substantial evidence to support the ALJ's determination that plaintiff has the physical capability to perform sedentary work, the Secretary erroneously applied the grid and guidelines in determining that plaintiff was not disabled. If plaintiff suffers from a combination of exertional and nonexertional impairments, "the Guidelines are first considered to determine whether [s]he is entitled to a finding based on nonexertional impairments alone. If such a finding is not directed, the ALJ must then consider how much the individual's work capability is further diminished by nonexertional impairments." *McCoy*, 683 F.2d at 1148.

Plaintiff testified about numerous nonexertional impairments, e.g., drowsiness, fatigue, lethargy, callouses on the bottom of her feet, swelling of the feet and pain. It is unclear whether the ALJ rejected all or some portion of plaintiff's testimony.[3]

The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). In rejecting some or all of plaintiff's testimony, the ALJ failed to consider each of the *Polaski* factors and failed to state clearly the reasons for rejecting plaintiff's testimony.

---

**3.** For instance, the ALJ stated that "[w]ithin the framework of the above definitions, the medical evidence does not show the existence of any nonexertional impairments." Tr. 9. It is not clear what definitions the ALJ is referring to. Within the same paragraph, the ALJ defines "sedentary work" and "residual functional capacity." If these are the definitions the ALJ is relying on, this is yet another example of the ALJ's failure to analyze exertional and nonexertional impairments in the manner required by *McCoy*, 683 F.2d at 1148. *See* text, *supra* at p. 7.

The ALJ subsequently wrote that "[c]laimant's testimony as to her symptoms, limitations, and restrictions, *to the extent she alleges an inability to perform sedentary work,* is not credible or persuasive and is not supported by substantial evidence." [Emphasis supplied.] Tr. 10.

In addition, the ALJ stated that: "Despite her claim of being able to sit for only 30 minutes, claimant sat through the hearing for approximately 70 minutes without any apparent sign of distress or discomfort. As a consequence, the undersigned gives little weight to claimant's testimony pertaining to her limitations and restrictions, and finds that it is generally nonpersuasive and not credible." Tr. 8.

Further, the transcript of the plaintiff's testimony at the administrative hearing demonstrates that the ALJ inappropriately rejected critical testimony based on his personal experience with diabetes.

Q Why would the diabetes, in your words, not let you do it?

A The dizziness and fatigue, you're extremely tired when you have 'INAUDIBLE'.

Q You are?

A Uh-huh

Q That's curious, I've had it for 34 years.

A Oh well.

Q Maybe you are, but I'm not.

A I am extremely tired.

Q Okay. I'm not kidding you, I've had it for 34 years, and I'm not tired so, apparently it depends on how you are taking care of yourself.

Tr. 32. Later during plaintiff's testimony, the ALJ concluded the primary reason plaintiff's diabetes is not well-controlled is because she does not take care of herself. "According to the medical evidence in the file, your diabetes is, Mrs. High, very frankly, not very well-controlled. There are alot of reasons for that, the primary one generally being that you're not taking care of yourself. Do you feel you are?" Tr. 62. Although there are references in the medical records to physicians' advice that plaintiff needs to maintain a strict diet and lose weight (Tr. 138; Tr. 139), or that she did not take her medication as prescribed (Tr. 143), there is nothing indicating that the *primary* reason plaintiff's diabetes is not well-controlled is because she does not take care of herself. Apparently, the ALJ improperly rejected plaintiff's testimony about the effects of diabetes on plaintiff by applying his own experience with diabetes to plaintiff. There is no medical evidence indicating the drowsiness and fatigue are not symptoms of diabetes.

 Where a plaintiff suffers from nonexertional impairments, the testimony of a vocational expert is required to determine their effect. *Tucker v. Schweiker*, 689 F.2d 777, 780 (8th Cir.1982). "The vo-

cational expert must be asked a hypothetical question which accurately set[s] forth claimant's impairments and resulting functional limitation so that the expert can realistically assess the availability of jobs." *Brenner v. Schweiker*, 711 F.2d 96, 99 (8th Cir.1983). There must be support in the record for each of the assumptions set forth in the hypothetical question. *Id.* at 98. A vocational expert's testimony that there are jobs in the national economy that plaintiff can perform is not substantial evidence when the testimony is based on a hypothetical question containing assumptions which are without support in the record. *Id.*

A vocational expert was called as a witness and the ALJ asked four hypothetical questions. The first question, which was based on the assumption that all of plaintiff's testimony was true, related to plaintiff's ability to perform her past relevant work. In response to the second hypothetical question which included the same assumption as the first question, i.e., that plaintiff's testimony was entirely credible, but also included an assumption about the transferability of plaintiff's skills, the vocational expert testified that there were no jobs in the national economy that plaintiff could perform.

The third hypothetical question covers four pages of transcript. It is impossible to determine whether the assumptions in the third hypothetical are based on the record because of the numerous omissions in the transcript of plaintiff's testimony which are designated "INAUDIBLE." The crucial difference between this hypothetical and the previous one was the ALJ's omission of the assumption that plaintiff suffered from drowsiness and fatigue. As previously discussed, the ALJ improperly rejected plaintiff's testimony about suffering from drowsiness and fatigue. Therefore, the ALJ should have assumed those nonexertional impairments in this hypothetical. Had the ALJ done so, the vocational expert's answer would have been that there were no jobs. See Tr. 71 and Tr. 78, the vocational expert's response to the

fourth hypothetical. With the incomplete assumptions, the ALJ responded to the third hypothetical question that there were jobs in the national economy that plaintiff could perform.

Finally, the fourth hypothetical question included the assumptions that plaintiff suffered from dizziness, lethargy, and sluggishness. The vocational expert testified that based on those assumptions, there were no jobs in the national economy that plaintiff could perform.

For the reasons stated earlier, there is substantial evidence that plaintiff suffers from nonexertional impairments including at least drowsiness, fatigue and pain. Therefore, the vocational expert's response to the hypothetical question which did not include any assumption about nonexertional impairments was not substantial evidence. Nevertheless, the ALJ relied on the one hypothetical which did not properly assume plaintiff's nonexertional impairments. The ALJ ignored both hypotheticals that included proper assumptions about plaintiff's nonexertional impairments. Therefore, there is no substantial evidence that plaintiff could perform any job in the national economy.

The Secretary had ample opportunity to develop the record in order to determine if there was substantial evidence that plaintiff was not disabled. Had the Secretary properly applied the law in this Circuit and had the Secretary properly considered the evidence, plaintiff would have been found disabled. Further, the Secretary has completely ignored her obligation to present a reliable and complete record of plaintiff's hearing. Therefore, remand would simply delay receipt of benefits. *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982).

For the reasons stated above, it is hereby ORDERED that:

1) Defendant's motion for summary judgment is denied;

2) Plaintiff's motion for summary judgment is granted;

3) The Secretary shall calculate the amounts due under this Order and process this claim on an expedited basis; and

4) Within thirty days from the date of this Order the Secretary shall report to the Court the amounts due plaintiff under this Order and the date when the payment of benefits will be commenced.